UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY K. KAYLOR,

    Plaintiff                                          Civil Action No. 06-12857

v.                                                   HON. ARTHUR J. TARNOW
                                                          U.S. District Judge
                                                          HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL              U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gregory Kaylor brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Motion for Summary Judgment be DENIED for the reasons set forth in Section **B.** of the analysis, and that the case be remanded for an award of benefits.

## PROCEDURAL HISTORY

On July 20, 2004, Plaintiff filed an application for DIB benefits, alleging disability as of March 19, 2003 (Tr. 92). After the initial denial of his claim, Plaintiff filed a timely request for an administrative hearing, conducted by Administrative Law Judge (ALJ) Richard

P. Laverdure on September 8, 2005 in San Francisco, California (Tr. 16). Plaintiff, represented by attorney Mark Greenman, testified by video teleconferencing, as did Vocational Expert (VE) Jennifer Turecki (Tr. 248-259, 269-278). On March 9, 2006, ALJ Laverdure found that although Plaintiff was unable to perform any of his past work, he retained the capacity to perform a significant number of jobs in the national economy at the light exertional level (Tr. 20). On May 26, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on June 28, 2006.

## BACKGROUND FACTS

Plaintiff, born October 24, 1952, was age 53 when the ALJ issued his decision (Tr. 122). He completed high school and worked previously as a yardman and heavy truck driver (Tr. 16). Plaintiff alleges an onset date of March 19, 2003 after sustaining a back injury at work (Tr. 92).

### A. Plaintiff's Testimony

Prior to Plaintiff's testimony, attorney Mark Greenman reported that since undergoing a spinal fusion, Plaintiff's treatment had been limited to aqua therapy (Tr. 245). Greenman indicated further that Plaintiff previously received a lump sum settlement from Workers' Compensation (Tr. 246). Greenman submitted that Plaintiff's condition precluded performing exertionally light work, contending additionally that Plaintiff did not retain transferable skills (Tr. 246-247).

Plaintiff testified that he had worked as a car hauler until a 1991 accident, after which time he performed the restricted work as a yardman (Tr. 249). He reported that the yardman

job consisted of driving vehicles from the end of an assembly line to approximately 200 feet away, then walking back to the assembly line (Tr. 249). Plaintiff estimated that he repeated this process approximately 300 times on a typical shift, adding that the job required him to walk between 11 and 12 miles each day (Tr. 249). He indicated that the yardman position also required him to "literally do a chin up" to get into larger vehicles (Tr. 249). Plaintiff stated that his current condition precluded performing the yardman job (Tr. 249).

Plaintiff testified that he was unable to walk more than 100 yards or sit for more than 10 minutes to half an hour without experiencing discomfort (Tr. 250-251). He indicated that his pain was centered in his left buttock, left thigh, and left lumbar spine area (Tr. 250). Plaintiff stated that he could generally lift no more than "a 12-pack of pop,"allowing that he could lift greater weights on a limited basis if "careful" (Tr. 252-253). He reported limited relief by performing stretching exercises (Tr. 251).

In addition to his physical ailments, Plaintiff reported that since a 1991 accident he experienced memory problems (Tr. 253). Testifying that he lived alone in a house-trailer, Plaintiff indicated that his parents helped him perform house and yard work chores (Tr. 254). He stated that on most days he went to a health club for aqua therapy, adding that three days a week he spent time at the library for the purpose of "relearning how to read," (Tr. 254). Plaintiff reported that he continued to shop for food and prepare simple meals for himself (Tr. 254).

Plaintiff testified that he slept poorly due to pain from his 1991 accident (Tr. 255). He reported that he drove short distances on a regular basis and had recently made a longer

car trip as a passenger, adding that he was able to cope with the discomfort of long-term sitting by shifting positions frequently (Tr. 256). He testified that since his March 2003 injury, he was unable to perform his former hobbies of hunting, fishing, golf, and racquetball (Tr. 257). He indicated that he "tried swinging the golf club three times, and almost cried" (Tr. 257).

Plaintiff reported that he underwent a spinal fusion in July 2003, acknowledging that x-rays taken before the March 2003 accident already showed a "grade 1 to 2 spondylolisthesis," and indicating further that he had undergone right shoulder and elbow surgery in 1992 (Tr. 258). He denied taking pain medication on a regular basis (Tr. 258-259).

### B. Medical Evidence

#### i. Treating Sources

In November 1991, Maury R. Ellenberg, M.D., noted that Plaintiff's condition had improved since he had sustained a workplace injury earlier in the year (Tr. 103). Plaintiff reported that he was exercising, but still experienced "significant" crepitation in his right shoulder (Tr. 103). Plaintiff also reported back and right lower extremity pain (Tr. 103). Ellenberg re-prescribed lifting restrictions (Tr. 103). The next month, Ellenberg opined that Plaintiff was permanently disabled from his former job as a truck hauler, but "would be eligible to work in the yard" (Tr. 102). In March 1992, Ellenberg found that Plaintiff was restricted to lifting 50 pounds or less (Tr. 100). In July 1993, Plaintiff underwent surgery to repair a right rotator cuff tear (Tr. 192). In September 2003 Steven T. Plomanitis, D.O.,

noted that Plaintiff had made a "satisfactory recovery," but restricted Plaintiff from workplace lifting over 20 pounds (Tr. 189). In March 1994, Plaintiff sought emergency treatment after experiencing severe back pain (Tr. 94). Ellenberg prescribed a temporary work release (Tr. 95). Imaging studies performed the same month showed "Grade I spondylolisthesis of L4 upon L5 with probable spondylolysis bilaterally" (Tr. 133). In October 1996, Plaintiff received prescriptions for Flexeril and extra strength Vicodin after injuring his back at home (Tr. 131). October 1996 imaging studies showed degenerative disc disease at L4-5 with "left-sided spondylolysis of L4 with 1st degree spondylolisthesis of L4 on L5" (Tr. 130).

In March 2003, Plaintiff sought emergency treatment after an abrupt conveyor belt movement jarred his back, causing pain and temporary leg numbness (Tr. 104-108, 120, 123). X-rays taken two days after the accident showed "extensive degenerative changes" with "[p]ossible radicular symptoms in the lower extremities" (Tr. 116). A spiral CT of the lumbosacral spine performed the next month showed "significant disc space narrowing at L5-S1 and a central herniated disc at L5-S1" (Tr. 181, 215).

A May 2003 examination at the request of Plaintiff's treating physician, Howard Schwartz, M.D., found that Plaintiff experienced severe back and left buttock pain along with left leg numbness (Tr. 214). Plaintiff estimated that he could stand or walk for a maximum of 15 minutes and sit for a maximum of 30 (Tr. 214). The same month, Peter Bono, D.O., prescribed physical therapy (Tr. 212). July 2003 treating notes by Dr. Schwartz indicate that Plaintiff did not experience any improvement after four weeks of physical therapy (Tr. 209).

The same month, Plaintiff underwent spinal fusion surgery (Tr. 145). Following surgery, Dr. Bono noted that back and leg pains were "completely resolved" (Tr. 203). In November 2003, Bono recommended that in the absence of physical therapy, Plaintiff could perform flexion/extension exercises at home (Tr. 202). Bono opined that Plaintiff should wait "at least five to six months after surgery for the fusion to be solid" before resuming work (Tr. 160, 202). The same month, Dr. Schwartz also noted that Plaintiff could "return to gainful employment in the very near future" (Tr. 199). In February 2004, however, Dr. Schwartz completed a form entitled "Attending Physician's Statement Regarding Total Disability Benefits," opining that as a result of "lumbar spine acquired spondylolisthesis," Plaintiff was "wholly disabled and prevented from engaging in any business or occupation whatsoever[]" beginning on April 19, 2003[1] (Tr. 156, 158).

### ii. Consultive and Non-examining Sources

In September 2004, S. Obri, M.D., examined Plaintiff on behalf of the SSA (Tr. 216-224). Obri reported that Plaintiff sought emergency treatment after a March 2003 workplace back injury followed by a July 2003 L4-5 fusion with bone grafting (Tr. 216). In addition, Obri noted that Plaintiff sustained injuries in a 1991 workplace accident which caused a closed head injury, multiple wrist fractures, and injuries to the right shoulder and elbow (Tr.

---

[1]Dr. Schwartz's February 2004 disability opinion, apparently alluding to an April 21, 2003 examination, states that Plaintiff was disabled as of April 19, 2003 (Tr. 156). However, the original statement made on April 21, 2003 indicates that Plaintiff's condition was precipitated by a *March 19*, rather than April 19, 2003 injury (Tr. 187).

216). Plaintiff denied taking medication, using illicit drugs, or smoking (Tr. 216-217). Plaintiff demonstrated normal reflexes, but a limited range of motion in the lumbar spine (Tr. 219). A Physical Residual Functional Capacity Assessment performed the following month found that Plaintiff retained the capacity to lift 20 pounds occasionally and ten pounds frequently; the ability to stand, walk, or sit for six hours in an eight-hour workday; and an unlimited ability to push or pull with the lower extremities with limited upper extremity pushing and pulling (Tr. 226). The report found further that Plaintiff was precluded from all ladder, rope, or scaffold climbing, but could climb ramps and stairs on an occasional basis (Tr. 227). Plaintiff was further limited to no more than occasional stooping and crouching, and frequent balancing and crawling (Tr. 227). Aside from a preclusion on "over the shoulder lifting - right," the report found the absence of manipulative, visual, or communicative deficiencies (Tr. 228-229). Plaintiff's environmental limitations consisted of "avoidance of concentrated exposure" to vibration or machinery (Tr. 229). The report concluded by stating that Plaintiff's allegations were "partially supported" by treating medical records (Tr. 230).

### C. Vocational Expert Testimony

VE Jennifer Turechi classified Plaintiff's former jobs as a yardman (hookup driver) and his earlier work as a car hauler (heavy truck driver) as semi-skilled at the medium level of exertion (Tr. 84). The ALJ posed the following question to the VE:

> "Assume a capacity for light work with no work at any heights meaning no ropes, ladders, and scaffolds. Use of ramps and stairs as well as crouching, crawling, kneeling, stooping, and balancing are limited to occasional. The

> flexibility to alternate sitting and standing at will. . . . So avoid concentrated exposure to other hazards that would pose a risk of serious injury or death, and vibrations as well. And with the dominant right upper extremity no overhead reaching, which would also preclude overhead lifting or carrying, and no forceful pushing and pulling with the right upper. Now, we can look at unskilled work with that range of light exertion, but let me ask ordinarily, are there any skills, semi-skills that transfer to work within that RFC ?"

(Tr. 270).

The VE stated that given the above limitations, none of Plaintiff's job skills were transferable but that Plaintiff could perform 345 parking lot attendant jobs, performed at the light exertional level, existing in the regional economy (Tr. 270-271). At the sedentary exertional level, the VE found that Plaintiff could perform the jobs of a surveillance system monitor (1,500 jobs) and information clerk (1,700 jobs) (Tr. 277).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Laverdure found that Plaintiff experienced degenerative disk disease of the lumbar spine (status post L4-5 fusion), with a central herniation at L5-S1 and Grade II spondylolisthesis; status post remote right shoulder arthroscopy; and status post remote right ulnar nerve transposition (Tr. 18, 19). The ALJ held that these impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521, but found that they did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4 (Tr. 18, 19). The ALJ also found that while Plaintiff was unable to perform his past work, he retained the residual functional capacity (RFC) to perform

> "light exertion with occasional climbing, bending, kneeling, stooping,

>crouching and crawling with no overhead reaching of the right upper extremity or forceful pulling and pushing and with avoidance of working at heights or in hazardous environments or operating vibrating equipment"

(Tr. 20).

He concluded that although Plaintiff's impairments prevented him from performing a full range of light work, Plaintiff could perform a significant number of jobs in the national economy, citing the exertionally *light* job of parking lot attendant (345 jobs regionally and 10,350 nationally), and the *sedentary* jobs of surveillance systems monitor (1,500/45,000), and information clerk (1,700/51,000).

The ALJ found Plaintiff's allegations of limitations "not fully credible," citing the absence of more aggressive treatment, and noting further that Plaintiff did not display muscle atrophy (Tr. 18). The ALJ also pointed out that Plaintiff continued to feed his cat, drive to the library, prepare meals for himself, and watch television (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### A. Treating Physician

Plaintiff faults the ALJ for adopting the non-disability findings of consultive and non-examining medical sources while ignoring his treating physician's February 2004 opinion that he was totally and permanently disabled. *Docket #7* at 12. Citing *Shelman v. Heckler,* 821 F2d 316, 321 (6th Cir. 1987), Plaintiff submits that contrary to the ALJ's findings, conflicts between treating and non-examining sources should be resolved in favor of the treating physician's opinion. *Id.*

"[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991); 20 C.F.R. §404.1527(d)(2). If the treating physician's opinion is accorded less than controlling weight, the ALJ must consider "the length of the treatment relationship . . . the frequency of examination, the nature and extent of the treatment relationship, [the] supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). Further, the "ALJ must 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2).

Pursuant to *Wilson, supra*, the ALJ's failure to state his reasons for rejecting Dr. Schwartz's February 2004 opinion in favor of the October 2004 non-examining conclusion was error (Tr. 156, 226). Although the ALJ cites Dr. Schwartz's November 2003 statement that Plaintiff could "return to gainful employment in the very near future" (Tr. 199), he fails to mention the same treating physician's finding of total disability made the following February. While although generally, a treating opinion may be discredited based on its lack of consistency the rest of record, the ALJ must include his reasons for doing so. "Claimants are entitled to receive good reasons for the weight accorded their treating sources *independent of their substantive right to receive disability benefits*." *Smith v. Commissioner of Social Sec.* --- F.3d —, 2007 WL 1040037 (6th Cir. April 9, 2007) (emphasis added). More fundamentally, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, WL 236419, 5 (6th Cir. 2003); *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995). Here, the Court is unable to determine whether the ALJ was unaware of the treating physician's February 2004 opinion or simply neglected to include it in his written decision. In any case, the failure to discuss a critical finding by a treating source generally requires a remand for clarification.[2] "In the

---

[2]Were this the only issue raised, Plaintiff would be entitled to a remand for further administrative proceedings. However, as discussed in the next section, Plaintiff is entitled to an award of benefits because even apart from the treating physician issue, there was a lack of substantial evidence that Plaintiff could perform a significant number of jobs at the light exertional level.

absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion." *Hardman v. Barnhart,* 362 F.3d 676, 679 -680 ( 10th Cir. 2004).

### B. A Significant Number of Jobs

Plaintiff argues next that the administrative determination is tainted by its finding that he was capable of only 345 jobs in the regional economy. *Docket #7* at 8-9. Pursuant to 20 C.F.R. § 404.1566(d)(1), he contends that the 345 parking lot attendant positions (10,350 nationally) as found by the VE and adopted in the administrative opinion, fail to constitute a "significant number" of jobs as required by the regulations. *Id. referencing* Tr. 20.

Recognizing that it is "impossible to set forth one special number as the boundary between a 'significant number' and an insignificant number of jobs," the Sixth Circuit found in *Born v. Secretary of Health & Human Services,* 923 F.2d 1168, 1174 (6th Cir. 1990), *citing Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988), that 1,350-1,800 jobs in the local economy constitute a significant number. Other Circuits have found that in some circumstances, fewer than even 1000 jobs in the local economy constitute a significant number. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs). Further, 42 U.S.C.A. § 423(d)(2)(A) instructs that "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives *or* in several regions of the country"(emphasis added). *See Harmon v. Apfel*, 168 F.3d 289, 292-292 (6th Cir. 1999) (finding that 700 jobs regionally was significant in light of the fact that 700,000 existed nationally).

Figured either regionally or nationally, the parking lot attendant positions, reduced by half due to Plaintiff's inability to park cars or reach overhead for keys, do not constitute a significant number.[3] On the rare occasion that the Sixth Circuit has held that fewer than 1,000 regional jobs constitute a substantial number, the finding has been coupled with national job numbers far exceeding the 10,350 found in the present case. *See Stewart v. Sullivan,* 1990 WL 75248,4 (6th Cir.1990) (finding that 125 local jobs constitute a "significant" number in recognition of the fact that 400,000 exist found nationwide); *Harmon v. Apfel, supra,* 168 F.3d at 291 -292 (700 jobs locally and 700,000 nationwide).[4]

The ALJ's finding that Plaintiff was not disabled on the basis that he could perform the exertionally light work of a parking lot attendant contains additional defects. While the Dictionary of Occupational Titles ("DOT") lists "Parking Lot Attendant" #915.473-010 as an exertionally light occupation, the modifications that the VE placed on the position to conform to Plaintiff's limitations make it a sedentary, rather than light position.[5] After accounting for

---

[3] Further, as discussed *infra,* the ALJ was required to establish that Plaintiff, 53, could perform *light* work to avoid a finding of disability. The fact that Plaintiff could perform a significant number of *sedentary* jobs such as surveillance clerk and security monitor does not cure the ALJ's failure to find a significant number of exertionally light jobs.

[4] *But see Johnson v. Chater, supra,* at 179 (200 jobs regionally and 10,000 nationally are "substantial").

[5] DOT #915.473-010 reads as follows: "Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based

the Plaintiff's limitations as listed in the hypothetical question, the VE found that the 345 remaining positions consisted of "sitting collecting money," requiring only sedentary activity (Tr. 271).

In the present case, whether Plaintiff, 53 at the time of the hearing, can perform light work is critical since a finding that he could perform only sedentary work would generally direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [] for only sedentary work, § 201.09, but not if his RFC is light. § 202.10."[6] *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986). The ALJ's error in finding that 345 regional/ 10,350 light jobs constitute a significant number is compounded

---

on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated **Storage-Garage Attendant (automotive ser.). May direct customers to parking spaces."**

[6]20 C.F.R. § 404.1567(a) "*Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

On the other hand, 20 C.F.R. § 404.1567 (b) states in pertinent part that *light* work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." (emphasis added).

by fact that the positions in question are actually sedentary.

Because the job findings are not supported by substantial evidence, a remand is required. The final question is whether to remand for further administrative proceedings and findings or to remand for an award of benefits using Plaintiff's disability onset date for calculating past due benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), hold that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler*, 771 F.2d rectification, 973 (6th Cir. 1985)).

As established above, the VE's job findings, based on hypothetical limitations drawn from the record, show that Plaintiff is incapable of performing a significant number of exertionally light positions. This, along with the fact that Plaintiff is closely approaching advanced age clearly points to a finding of disability. There is little, if anything, in this record that materially contradicts this opinion. Therefore, pursuant to *Faucher*, Plaintiff is entitled to a remand for benefits.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary

Judgment be GRANTED, that Defendant's Motion for Summary Judgment be DENIED, and that this case be remanded for an award of benefits.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: June 14, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 14, 2007.

                S/Gina Wilson
                Judicial Assistant